```
                    77UNITED STATES DISTRICT COURT
                       NORTHERN DISTRICT OF ILLINOIS
                            EASTERN DIVISION
```

| | |
|---|---|
| KENNETH BOWDRY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 07 C 2135 |
| | ) |
| KEVIN OCHALLA and WILLIAM BEATTIE, | ) Judge Rebecca R. Pallmeyer |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kenneth Bowdry ("Plaintiff") asserts that he was incarcerated for approximately three months longer than his sentence called for, and that two Cook County Public Defenders are responsible. Plaintiff filed his original complaint *pro se*, naming the two attorneys and other defendants. Following unsuccessful settlement efforts, appointed counsel filed an amended complaint, which this court dismissed on motion. Counsel has filed a Second Amended Complaint, amplifying the earlier allegations but, for the reasons explained here, the court concludes that Plaintiff's only federal claim fails as a matter of law.

## FACTS

After Plaintiff was arrested on December 7, 2004 for the unlawful possession of a handgun, he was represented by Defendant William Beattie ("Beattie"), then a Cook County Assistant Public Defender. (2d Am. Compl. ¶¶ 5,6.) On May 5, 2005, Bowdry pleaded guilty to violating 724 ILCS 5/24-1.1(a), a Class 3 Felony, and was sentenced to two years and six months in prison with his release, to be followed by a one-year term of Mandatory Supervised Release ("MSR"). (*Id.* ¶ 9.) The *mittimus*–the document that controls the amount of time to be spent in prison and under MSR–issued after Plaintiff's plea was inaccurate; the *mittimus* indicated that Plaintiff was convicted of a Class 2 Felony rather than a Class 3 Felony. (*Id.* ¶¶ 11,12.) Beattie did not notice the inaccuracy of the *mittimus* and thus did not take steps to correct it. (*Id.* ¶ 12.)

On September 2, 2005, after serving approximately four months in prison, Plaintiff was

released and subjected to a two-year term of supervised release; had the *mittimus* been accurate, Plaintiff would have been on MSR for just one year. (*Id.* ¶ 15.) On February 24, 2006, Plaintiff was arrested again and immediately incarcerated due to his probationary status.[1] (*Id.* ¶ 16.) Defendant Kevin Ochalla ("Ochalla"), a Cook County Public Defender, represented Plaintiff in this second case. (*Id.* ¶¶ 2, 20.) Plaintiff alleges that Ochalla orally agreed to assist Plaintiff in correcting the inaccuracy on the earlier *mittimus*, but failed to do so, and Plaintiff remained in custody for several additional months as a result. (*Id.* ¶¶ 23, 25.)

## **DISCUSSION**

Plaintiff's Second Amended Complaint raises four claims: (1) deprivation of constitutional rights actionable under 42 U.S.C. § 1983, (2) legal malpractice, and (3) breach of fiduciary duty against both Defendants, and (4) breach of contract against Ochalla only. (*Id.* ¶¶ 33-40.) With respect to Plaintiff's section 1983 action, he claims that, as a result of Defendants' conduct, he was deprived of his liberty without due process in violation of the Fourteenth Amendment; deprived of his right to the equal protection of the laws in violation of the Fourteenth Amendment; and subjected to cruel and unusual punishment in violation of the Eighth Amendment. (*Id.* ¶ 31.) Plaintiff further claims that Ochalla's failure to correct the inaccuracy of the initial *mittimus* caused Plaintiff to be deprived of his right to petition the government in violation of the First Amendment. (*Id.*) Defendants again move to dismiss the complaint.

In assessing this motion, the court accepts the well-pleaded allegations as true and draws all reasonable inferences in plaintiff's favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). Federal Rule of Civil Procedure 8(a)(2) requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." This statement

---

[1] The court notes that it appears Plaintiff would have been immediately incarcerated even if the *mittimus* was accurate, as the second arrest occurred within one year from Plaintiff's release from prison.

2

must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Killingsworth*, 507 F.3d at 618 (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct 1955, 1964 (2007)) (additional citation omitted).

To state a claim for relief under section 1983, Plaintiff must allege: (1) that Defendants deprived him of a federal constitutional right; and (2) that Defendants acted under color of state law. *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006). In asking the court to dismiss Plaintiff's complaint, Defendants argue that Plaintiff cannot meet the second prong of this test. They rely on the United States Supreme Court's holding in *Polk County v. Dodson*, 454 U.S. 312, 325 (1981) that "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." In *Polk*, the public defender determined that the defendant's appeal of his conviction was "wholly frivolous" and sought permission to withdraw as counsel. *Id.* at 314-15. The Iowa Supreme Court granted the attorney leave to withdraw and dismissed the defendant's appeal. *Id.* at 315. The would-be appellant then filed a civil rights action in federal court against the individual public defender and other county officials. *Id.* He claimed that, by withdrawing from the case, the public defender "deprived him of his right to counsel, subjected him to cruel and unusual punishment, and denied him due process of law." *Id.* The trial court granted the defendants' motion to dismiss, reasoning that plaintiff had not established that the public defender acted under color of state law, but the Court of Appeals for the Eighth Circuit reversed. The Eighth Circuit held that the employment of public defenders by the County, which is a "creature of the State," renders them state actors for the purposes of a section 1983 claim. *Id.* at 316.

The Supreme Court granted *certiorari* and ultimately reversed the decision of the Eighth Circuit. *Id.* at 317. Rejecting the theory that the public defender acted under color of state law, the Court explained that, as a defense lawyer, a public defender's responsibilities "are those of a personal counselor and advocate," and that a defense lawyer "characteristically opposes the

3

designated representatives of the State." *Id.* at 318. The Court further noted that although the employment relationship between a public defender and the State is relevant, "it is insufficient to establish that a public defender acts under color of state law within the meaning of section 1983." *Id.* at 321.

The Court did, however, leave the door open for suit against a public defender, by limiting its broad holding to situations where a public defender is "performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Id.* at 325. Thus, a public defender *can* act under the color of state law in certain circumstances, such as when making hiring and firing decisions on behalf of the State. *Id.* at 325 (citing *Branti v. Finkel*, 445 U.S. 507 (1980)). The Court noted a further potential exception to the general rule that public defenders do not act under color of state law, as well, stating that "[it] may be . . . that a public defender also would act under color of state law while performing certain administrative and possibly investigative functions." *Id.* Plaintiff here seizes upon this language; he argues that Defendants' failure to arrange for correction of the *mittimus* falls into the administrative exception to the rule of *Polk County.*

In support of his theory that the administrative exception to the *Polk County* rule is available here, Plaintiff relies on two other authorities. First, in *Georgia v. McCollum*, 505 U.S. 42, 54-55 (1992), the Supreme Court held that a criminal defendant's exercise of peremptory challenges constitutes state action for purposes of the Equal Protection Clause. In considering this holding, it is important to note that *McCollum* addressed the narrow issue of "whether the Constitution prohibits a criminal defendant from engaging in purposeful racial discrimination in the exercise of peremptory challenges." *Id.* at 46. Significantly, the Court did not address whether a criminal defendant would have standing to bring a civil action against his lawyer's use of peremptory challenges.

In *McCollum*, a grand jury indicted the two criminal defendants, both white, charging them with aggravated assault and simple battery; the alleged victims were African American. *Id.* at 44.

4

Prior to jury selection, the prosecution moved to prohibit the defendants from exercising peremptory challenges in a racially discriminatory manner, urging the trial court that the victims' race was likely a factor in the alleged attack and that counsel for the defendants made it clear that the peremptory challenges would be used in a racially discriminatory manner. *Id.* at 44-45. The trial court denied the prosecution's motion, holding that neither State nor federal law prohibited the exercise of peremptory challenges in a racially discriminatory manner. *Id.* at 45. The Supreme Court of Georgia affirmed, distinguishing *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614 (1991)[2], on the ground that *Edmonson* involved private civil litigants rather than criminal defendants. 505 U.S. at 45-46.

The Supreme Court granted *certiorari* and reversed the decision of the Georgia Supreme Court, holding that it is constitutionally impermissible for criminal defendants to use peremptory challenges in a racially discriminatory manner. *Id.* at 59. Citing *Polk County*, the defendants urged that "the adversarial relationship between the defendant and the prosecution negates the governmental character of the peremptory challenge." *Id.* at 53. The Court was unpersuaded, however; the Court observed: "*Polk County* did not hold that the adversarial relationship of the public defender with the State precludes a finding of state action–it held that this adversarial relationship prevented the attorney's public employment from *alone* being sufficient to support a finding of state action." *Id.* at 54. According to the Court, the determination of whether a public defender is a state actor "depends on the nature and context of the function he is performing." *Id.*

Significantly, however, in reaching its conclusion that the exercise of peremptory challenges constitutes state action, the Court did not rely on the "administrative exception" Plaintiff invokes here. Instead, the Court distinguished the exercise of peremptory challenges from other traditional defense-lawyer functions on the grounds that peremptory challenges involve "wielding the power

---

[2] The Supreme Court in *Edmonson* held that private litigants in a civil case cannot exercise peremptory strikes in a racially discriminatory manner.

5

to choose a quintessential government body . . . ." *Id.* Although the *McCollum* Court acknowledged the existence of the administrative exception, its holding was based on the preexisting rule that, given the uniquely governmental nature of jury composition, the exercise of peremptory challenges is state action. Plaintiff here himself does not attempt to analogize a mistake in the *mittimus* to the exercise of a peremptory challenge; rather, he merely cites the case for the proposition that a public defender *can* act under color of state law. Finally, and perhaps most importantly, *McCollum* has never been used as authority to support a civil action against defense counsel by the client.

The other case Plaintiff cites did involve a civil action against a public defender. In *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592 (6th Cir. 2007), the plaintiff was incarcerated for failing to pay a court-ordered fine related to a reckless driving charge. *Id.* at 597. In a section 1983 class action, he alleged that the county public defender's policy of failure to request an indigency hearing–which would assess the plaintiff's ability to pay the court-ordered fines–violated his Fifth, Sixth, and Fourteenth Amendment rights. *Id.* at 612. Significantly, the court emphasized that the plaintiff "[did] not seek to recover on the basis of the failures of his individual counsel, but on the basis of an alleged agency-wide policy or custom of routinely ignoring the issue of indigency in the context of non-payment of fines." *Id.* Indeed, the court acknowledged that requesting indigency hearings is "within a lawyer's 'traditional functions,'" yet the court concluded that the alleged conduct fell within the administrative exception to *Polk County* because it is "systemic and therefore carries the imprimatur of administrative approval." *Id.*

In this court's view, *Powers* does not support Plaintiff's contention that Beattie and Ochalla were acting under color of state law. The most obvious conclusion from the allegations of the complaint is that Beattie and Ochalla simply neglected to take action or were unsuccessful in their efforts. There is no allegation here of any systematic or widespread administrative policy on the part of the Cook County Public Defender, of tolerating the issuance of inaccurate *mittimus* orders. To the contrary, Plaintiff alleges that Defendant Ochalla agreed to do something about the mistake

but then failed to do so.

On Plaintiff's understanding, Beattie and Ochalla were acting in a sufficiently administrative capacity because reviewing or correcting a *mittimus* is, in Plaintiff's estimation, "essentially administrative" and thus beyond the traditional, adversarial role of defense counsel. (2d Am. Compl. ¶¶ 14, 30.) Plaintiff offers no authority for this proposition, and the rationale of *Powers* appears to defeat it. The *Powers* court explained that requesting an indigency hearing *is* within a lawyer's traditional functions; it was only the suggestion that the county defender's office allegedly chose, as an administrative matter, deliberately to neglect that function that led the court to recognize an exception to the general rule that a public defender is not engaged in state action. The same appears to be true here; like an indigency hearing, review of a *mittimus* occurs post-judgment and does not involve traditional adversarial proceedings, but nevertheless falls within the scope of a lawyer's traditional functions.

Although the Court of Appeals for the Seventh Circuit has not fully addressed the administrative exception to the *Polk County* rule, its holding in *Powell v. Davis*, 415 F.3d 722 (7th Cir. 2005), is illuminating. The plaintiff in *Powell* had been convicted of murder in Indiana state court. While his direct appeal was pending, he sought post-conviction relief. The public defender appointed by the post-conviction court requested an indefinite stay of proceedings, "explaining that his office required him to work on cases in order of their filing dates, and he had numerous clients with filing dates earlier than [the plaintiff]." *Id.* at 725. The case dragged on for two years with no progress and was ultimately dismissed for unrelated procedural reasons. Plaintiff then filed a 28 U.S.C. § 2254 petition, but the district court denied it as untimely. Affirming that ruling, the Court of Appeals also considered plaintiff's request for equitable relief from the statutory time-bar on the ground that inaction by the public defender was a state-created impediment. The Seventh Circuit declined to adopt the theory that the public defender's case management policy falls within the administrative exception to the *Polk County* rule: "[T]he public defender's case management

7

priorities are not the type of administrative measures, like hiring and budgetary decisions, that would make the office a state actor under the administrative-action exception for public defenders identified in *Polk County . . . .*" *Id.* at 727. Instead, the Court concluded, the "apparent first-in, first out policy for handling cases, no matter how ill-conceived it may be, is akin to the traditional functions of a law firm in organizing caseload among its lawyers, and therefore is not state action." *Id.* Thus, even though the petitioner in *Powell* identified a systematic case-management policy unrelated to the merits of petitioner's case, the court rejected the notion that the resulting delay constitutes an administrative act, falling with the *Polk County* exception to the standard rule that a public defender's action is not state action.

Defendants' actions (or inactions) with respect to Plaintiff's *mittimus* were not performed pursuant to any alleged policy. And although those actions may not have been part of an adversary proceedings, the court concludes they were nonetheless traditional legal functions. The exception recognized in *Polk County* is therefore inapplicable here, and therefore grants Defendants' motion to dismiss.

## **CONCLUSION**

Count One is dismissed without prejudice. Having dismissed Plaintiff's only federal cause of action, the court need not reach his state law claims. Defendants' motion to dismiss [64] is granted.

ENTER:

Dated: March 19, 2009

REBECCA R. PALLMEYER
United States District Judge